Now we've got a little bit of an unusual circumstance this morning because we're hearing three separate cases consolidated together with three different advocates. The cases are 15-7061, 15-7021, and 15-7025. Mr. Valentini? Now each of you, since you're arguing separately, might want to start off by telling us precisely what issues you're dealing with in terms of this appeal. Absolutely. Good morning. I may please the Court. Francesco Valentini for Petitioners, American Legion et al. in case number 15-7061. Our petition raises two issues. The first issue is the VA rules changes to the informal claim system at the claim initiation stage. The second issue is the redefinition by the VA of the scope of a claim that the VA will deem raised when it receives an application. As the Supreme Court and this Court have long recognized, Congress intended the veterans benefit system to be as informal and not adversarial as possible. That informality is especially critical at the claim initiation stage when the veteran is almost invariably unassisted by counsel and is in fact statutorily prohibited from paying for counsel. Do you want to tell us, just for purposes of understanding the background, what the prior system was and what the differences are in the regulation now that it's been implemented? For over 80 years, a pillar of the informal system that Congress has put in place and the VA has implemented has been the principle that a veteran will not be deprived of the full extent of his earned benefits just because the first submission requesting those benefits is made through a narrative submission as opposed to a standardized form. The veteran could submit an informal submission, a narrative submission, just a letter, and alert the VA that he was raising intended to seek benefits. At that point, the process would begin. So long as the veteran would perfect his claim within one year, the veteran would then be entitled to the effective date as of the date of the informal claim. The VA's regulations depart from that core principle that had been the law for 80 years, and for that reason, they're contrary to statute. Can I ask you, suppose that, just put aside for a minute, an important argument that you make, which is that that core principle essentially got codified in the statute by various forms of reenactment, so that for purposes of this question, assume that there's no statutory bar to the new intent to file form requirement. What is your argument for why that new requirement is unreasonable, arbitrary, and capricious in APA form? Right. As you mentioned, we have an important statutory argument, a contrary to law argument, but aside from that argument, I think your question focused on the second part, so the Chevron Step 2 or arbitrary and capricious review. The new rule is arbitrary and capricious because the VA has failed to draw a rational connection, and is required to do under state firm Supreme Court precedent, between its asserted goal of administrative efficiency and the policy choice is selected to implement that goal, which is to require, not just make optional, but require standardized forms in order to establish... But the point of a standardized form is a uniformity, is it not? That's the idea of standardization. No, absolutely. So how is that not a rational connection? No, no. We are not taking issue with the fact that the introduction and offering standard forms as an option is a rational decision, and we in fact favor the dissemination and the encouragement of the use of... You're missing the point of my question. I'm saying, as opposed to an option, standardization would require a mandatory. Right, but standardization cannot be achieved in this case for a... There's statutory constraints that prevent standardization from happening, because the VA has an independent statutory and also self-imposed regulatory duty. But we're on Judge Toronto's hypo, and you simply pass that over by saying, right, but if you just say that, then by saying right, you've conceded your entire hypothetical argument and moved back to the statutory. Is that what you're doing? No, that's not... With respect, Your Honor, I don't think that's what I'm doing. We think that statutory standardization is a goal and is a legitimate goal for the VA, but there are limits on how much standardization is just possible within this system. But we're talking about... I'm sorry. Go ahead. And those limits are imposed by 1501A, which requires that the VA still look at all the submissions that come in. But you're falling back to your statutory argument. Have you abandoned your argument under the hypothetical? That is a Chevron argument. No. No, Your Honor. I've not abandoned that argument because... The government says there is an efficiency gain, I think page 31 or 32 of its brief, from having a single form that clearly communicates, either filled out on the telephone or filled out online or filled out on paper, but a single form that eliminates work that would otherwise have to be done by the VA to figure out whether they had one of these starting forms. And why is that all by itself not sufficient to meet a quite low threshold for arbitrary and capriciousness? Precisely because the premise of that argument is work that would otherwise have to be done by the VA. But that work has to be done by the VA in any event. But previously, is it not right that when they got a handwritten letter and they were evaluating it for purposes of deciding whether it started the effective date clock, they would have to scrutinize it to figure out if it said enough about a condition because that they've sort of dropped out, but there used to be some analysis of more than name social security number and I'm going to file a claim. So why doesn't that make things easier, which I take as the principal point that they raised for saying here's why it's rational. And I know you're eager to answer, so go ahead. Because that requirement that a specific condition had to be defined within the informal submission was entirely self-imposed by the VA. So what we're arguing is that the new rule is arbitrary and capricious, not just because the previous rule may have been inefficient. The point is that the new rule, the efficient way to accomplish the goal that the VA has fixed for itself is simply to say we will no longer require the identification of a specific condition just as the intent to file form which they have introduced does. All we are saying is that the efficient way to address their policy goal and the only rational way and the way that does not impose unneeded and unnecessary formalities on vulnerable veterans is to require exactly the same kind of information that is required in the intent to file form just to accept it if it's written on plain paper as opposed to formal paper. Since the VA has to review that plain paper anyway. If that's the position you're advocating is one kind of along the line, you want to take what you like about the VA regulation, the changes that you like, but then also expand them to be the form of the previous system? Is that what you're advocating? I'm not sure I would frame the request in those terms, Your Honor. I would say that what we are advocating is for the VA not to add the requirement that formal standardized form be used, but just leave them open as an option because making that option a requirement is a policy choice which is arbitrary and capricious. What about the phone call aspect of it that was added? Doesn't that make it very easy for claimants to pursue this process? In fact, in certain respects, easier? What we're talking here is what action creates the placeholder for being able to go back one year in terms of benefits if you prevail on the benefit question, right? Right. Isn't it, in certain respects, really much easier to deal with the new system than it was the old? Again, we don't take issue with the fact that the new system does incorporate some overdue aspects of modernization to the VA system. We don't take issue with that proposition. The proposition that we take issue with is just that those changes are required to the exclusion of other systems which, if one is to consider a rational system that does not unnecessarily penalize vulnerable veterans, must be in place. But if you recognize that certain changes are overdue, that's because part of that is the need for uniformity and the need for clarity so that it is a more efficient system. If that's the case, why aren't the regulations as they've been constituted sufficient to at least under the reasonable standard? Because we're not asking to strike down all the regulations that have been imposed. All we are asking to strike down and hold unlawful is the requirement that only those new systems be used since continuing certain aspects, limited aspects, of the informal placeholder system would add no work to the VA and would maintain an option open to vulnerable veterans who will be penalized and are being penalized by the current regulations. I see I've cut into my rebuttal time. Judge Taranto has another question. No, I do want to hear about the second issue, but if somebody else is going to address that, I'm happy to wait for that. I think it was very briefly just say that... No, go ahead. It's no problem with the clock. Keep going. Thank you. The VA's rulemaking also makes clear that it will not develop an applicant's medical disability claim for a given medical condition until that specific medical condition is actually expressly raised or there is a complication of a condition which is being raised. No matter how unambiguous the evidence of record that the VA is statutorily required to review makes that condition. I may be misremembering, so I think you just said that what the VA has said is that it will not develop the evidence on, let's call it, the unrelated second condition. I think we're on the same page about what that is, right? I didn't remember that that's what the VA had said, only that in developing whatever the evidence in the investigation of Claim 1 reveals, some of what it reveals will have to be filed with a second claim with an accordingly later effective date, but not that they wouldn't develop the evidence. They would develop the evidence only based on the first condition because the scope of the claim as redefined in 3.165D2 will just be limited to that first condition. There will be no occasion for the VA to even inform the veteran, the veteran who does not know about his entitlement to benefit under that second condition, even the VA. Do you happen to have the Federal Register citation for what you're describing as the limitation on what the VA will be doing if a second condition arises in the course of submissions on Claim 1? The new regulation 3.155D2J38 in this case says that once VA receives a complete claim, VA will adjudicate as part of the claim entitlement to any ancillary benefits that arise as a result of that adjudication. Then it goes on to say, VA will also consider all lay and medical evidence of record in order to adjudicate entitlement to benefits for the claimed condition as well as entitlement to any additional benefits or complication of the claimed condition. Right, but I took that language to mean that it would adjudicate only conditions related to Condition 1, but not that it wouldn't develop the evidence for Condition 2 if it came to it. It would just tell the claimant this is about the knee and not the elbow, and in this case the knee and the elbow conditions are unrelated, so you only filed about the knee and if you've got a claim about the elbow, you've got to file a new claim and a new starting date would arise. Have I misunderstood what the VA has indicated? Well, the VA has not indicated anywhere under the regulations now that it would actually inform the veteran as to that separate condition. At page 42 of their brief, I think they make it quite clear that under the final rule, only an issue that is what they call no factual medical or causal. I'm sorry, can you repeat what you said? You said they've made it clear when you're setting the brief? At page 42, I'm sorry. They say under the final rule, an issue that has no factual, medical, or causal relationship to any of the symptoms or conditions identified on the standard form, by that they mean basically the second condition in Judge Taranto's hypothetical, would not be considered part of the claim. At that point, if a condition is not considered part of the claim, there is nothing that the VA is required to do. They've not acknowledged any requirement to do anything. All we're saying... And how does this differ from what existed in the prior system? Because I think there might be some dispute between the parties in terms of how the VA handled this historically. Right. There is some dispute between the parties about how the VA has handled this kind of issue in the past, largely because, as we know from the Roberson line of cases, Mirage, Andrews, and Comer, and most recently Harris, the VA has been extremely recalcitrant about getting full effect to this course Roberson decision. What we read Roberson to say is to stand for the proposition, which is what he actually said, that the VA must develop all potential claims. And what they're saying in the brief is, no, Roberson does not require us to develop all potential claims that are raised by the evidence. It only requires us to adjudicate, say, ancillary benefits or complications of actually expressly raised claims. And Roberson, as I recall, involved TDIU, which one could at least, I think, fairly argue was kind of a separate issue. It's not a completely separate claim, but it's a claim for something that builds on to the claim that was initially requested. Did any of the other cases you just referenced deal with really different conditions and completely different claims, or were they also kind of TDIU issues? No, they were not all TDIU issues. This court has repeatedly reminded the VA that Roberson is not limited to its facts and it's not limited to TDIU. Most instructive, I believe, is this court's recent decision in Harris, recent from a couple of years ago, where this court held that Harris applied in a situation in which the veteran went in for an Agent Orange registry exam, which is a very wide-ranging exam where a number of different conditions are tested. And as part of that examination, the veteran only submitted a form that basically said, signed the form that said this is an application for benefits. That's all it said. The veteran did not identify any specific condition on that form or otherwise. Now, separately, the VA generated an Agent Orange registry form, which listed a number of conditions, one condition, dermatitis in particular, and then the question arose whether that expressive intent to apply for benefits accompanied by evidence generated by the VA was sufficient to trigger Roberson and the duty to develop the claim. And this court said yes. Harris said yes, Roberson does apply under the circumstances and remained for the VA to adjudicate the claim. What happens if you have a claim for something, a problem with your knee, and it turns out there's some evidence in the record that you've got some symptoms of PTSD? Is it your view that under the prior system, the VA, having uncovered some suggestion of PTSD, would have then treated that initial claim and adjudicated it as if PTSD was a separate aspect of that claim, or would they have just required a new claim to be filed? Right. What I think Roberson would have required the VA to identify that claim and ask the veteran whether he wanted to pursue that claim. That is the duty to develop the claim, which is reflected in Roberson. Now, one thing I want to make clear, we're not saying that any sort of medical condition that somehow arises on the evidence is subject to this Roberson duty to develop. What we are saying is that conditions that are ambiguous on the face of the evidence and for which entitlement to benefit is also ambiguous on the face of the evidence are subject to this duty. The VA says, and it's brave, that they would broadly construe the scope of all symptoms or conditions identified on the application form. And I take that as making me feel warm and fuzzy, except that they cite to the Federal Register 14 and 15 in the appendix, and I don't entirely derive that sentence out of the Federal Register. What's your take on it? Because if you say in passing, you know, I'm making a claim on my knee, and by the way, I took a shrapnel round in my elbow, and I can't move my arm, it would seem that the VA under this sentence would say, oh, there's a claim we've got to develop. Well, perhaps it would if the claim is actually, if that condition is specifically identified on the application. What we're taking issue with is the VA's position that if a specific condition is not... Under the record, I believe if a condition is specifically identified... But in Judge Wallach's hypothetical, it wasn't specifically identified. They're saying I have a claim on my knee, but by the way, when my knee got hurt, the shrapnel also hit my elbow, and I can't seem to use my hand. My understanding of their position is that if the application were to actually mention an ailment, the application, not the evidence, but if the application specifically mentions or not specifically mentions a symptom, they take the position that at least as a matter of principle, they would develop it. But the duty to develop comes up in a different context, which is the veteran knows that he may be entitled to benefits for one condition, but just doesn't know that he may be entitled to benefits for another condition, so that condition is not on the application. But it's clear on the face of the evidence before the agency that the veteran also has a separate condition, and it's also clear to the agency that there's service connection and that the veteran is entitled to the benefit. The VA says under Robertson, we have no duty to do anything at all with that claim. We're saying, no, you have a duty to develop that claim. But they say they would broadly construe the scope of all symptoms or conditions identified in the application form. So if the vet identifies that symptom... That's correct, but the vet has no idea he may be entitled to benefits for that symptom. He may simply not identify that symptom. The problem is that veterans are not – this is a very formal system that assumes that the veteran may not know the exact extent of his legal rights. And what is your concern here? I mean, there are two ways this can go. Would you be satisfied if it was clear that the VA had an obligation or intended to then tell the veteran if new material is uncovered, you need to file a claim on this? Or is your concern and your insistence on the fact that that has to be considered as part of this claim because we're talking about the date of the filing and how much payment the veteran is actually going to get out of this particular claim? Did you understand my question? Yes, we would prefer if it were – our position is it should be considered part of the same claim because the whole duty is consistent with the origin and the concept of the Roberson duty, which is the veteran submitted a form and said that expressed intent to apply for benefits, and it is that intent that we think Roberson requires to include all conditions. We think that's the principal way to resolve this case. Of course, as an alternative, if the VA, if the court were to hold it, that second claim that the VA at least has a duty to alert and develop and alert the veteran to the need of initiating and filing a separate application, of course, that would be better than what the VA recognizes as a duty right now. Okay, thank you. We've held you way beyond your time. We'll restore three minutes of rebuttal and hear from your colleagues. Thank you. For your own hearing, you have a minute. That may be a good thing, depending on how good it is. May it please the court, Doug Gruszynski for Veterans Justice Group. My principal focus is intended to be on the notice of disagreement, but of course we'll be happy to discuss our position on any of the other issues. Petitioners are here today because the VA has gone well beyond requiring standardized forms. In fact, I think all of the petitioners agree that standardization at any level is an appropriate action for the secretary to continuously consider, and this particular action of standardized forms, in principle, is very beneficial to both the veteran and the VA. However, the secretary has gone well beyond that in this rulemaking. Well, why don't you tell us on the notice of disagreement what the prior practice was and how the regulations changed that prior practice. The prior practice is illustrated in the joint appendix on 334, which is a notice of disagreement, which I happen to have produced, that specifically states and identifies 334. It's the last entry in the joint appendix. 334 and then the subsequent approval of that notice of disagreement on the following three pages. It was very clear and accepted for the decades that I've been in this business that the determination that you had to identify was the date of the rating decision. That's the determination was the rating decision, not the issues within the rating decision. And as you can see, this notice of disagreement, there's two sentences essentially, says, we disagree with the rating decision dated and wish to appeal the issues therein. Do I understand? Well, let me just ask you, in the new regime, the new regulatory regime, can you fill in the box on the form that says essentially what your 334 letter said, I disagree with and seek review of all of the decision contained in that decision? Absolutely not, Your Honor. And as a matter of fact, as I will point out later, the Form 9, which has been required for decades, we have actually back into the 60s at least, which is subsequent, which is the downstream perfection of the appeal, contains such a box. Is that after the regional office has done its statement of the case? The process that we're talking about is you receive a rating decision. You have one year to file a notice of disagreement. Then following a notice of disagreement, the VA will eventually prepare a statement of the case, which by statute is required to discuss the issues within the rating decision. That's 7105D3. Then the now appellant can perfect that appeal by filing a VA Form 9, which has been required for decades, as I said. On the VA Form 9, there are two check boxes, even though it's recently been moved from the top to the bottom. One check box says I want to appeal all the issues in the statement of the case and any subsequent supplemental statement of the cases, and the second box says I only wish to appeal the following issues. That is completely contrary to the logic in the brief by the Secretary and the rulemaking in that the more specific requirement for the perfection allows you to check a box that says all. When you're allowed to have paid counsel to advise you, and in many cases my advice is we don't want to appeal them all. We want to appeal these because these are the ones that were wrong. Up front in the current case, the NOV form does not contain an all box. It asks you for the date. You're talking about the new regulation. The new form, which is cited in the brief. I get all the numbers wrong, but the new form does not have that box. I remember seeing the new form somewhere, but now I can't find it. We have a copy of it here. Oh, it's not in the papers? It wasn't in mine. It was an omission on my part. Okay. It actually does not contain a box at all. It has blanks where you have to identify the issue you wish to appeal, and it has four boxes in the middle. The form number is VA-210958, and it also asks for the date of the rating decision, but then it has in the middle area of disagreement. The check boxes are service connection, effective date, evaluation, disability, or other, and it tells you you have to list those issues. So I think it's maybe in the third case, JA-295. I think that's what I'm looking at. This is, what was it, form? 958. Yes, yeah, it is. And as you will see, the issue there is it is a more specific. The specification is the issue that we have. You have an unrepresented veteran, largely, who is prohibited by statute from getting and arranging paid counsel, and he's asked and required now under penalty of permanent deprivation to identify the specific issues that he or she disagrees with. It's particularly troubling when you're appealing the failure to address an issue, which I will represent in my practice as largely the issues that we are raising because the rating decision did not address something. So in this case. And this form, if we're looking at the same thing in the middle column, itemizes service connection, effective date, evaluation of disability, other. And the problem, I gather, is that you don't think that that allows somebody just to write all in the left column and the breakdown into three plus a catch-all might be misleading, demand too much in the filing of the notice of disability. Absolutely not, Your Honor. You cannot. I would submit under the brief, as well as the specifics of the rule itself, you must specify the issues or those issues are lost. And that is our complaint. If you overcheck, what's the result? That is, the veteran sits down and just checks all the boxes. Well, you still have to have the specific area of disagreement. And the specific area of disagreement may be you did not consider, for example, M21 section so-and-so Q.10, which tells you that you're supposed to do something because I'm a Thailand, Agent Orange claimant. All right? Just putting in here all, just putting in specific area of disagreement, I didn't get the benefits to which I was entitled. I believe that is very clear. That is exactly what the rulemaking is trying to prevent. Or why change it? Why change it at all? Now, in practice, good practitioners don't just put in the example I showed you. That was under short-term, we needed to get something in the whole place. We will explain why we believe. All right? But the real telltale here is the VA's own practice and history. Can I just say, I mean, so there's a, I think I'm reading correctly, in the new regulation 2201A.4, there's a sentence that says, if the claimant wishes to appeal all of the issues decided by the agency of original jurisdiction, the form must clearly indicate that intent. Doesn't that indicate that putting the word fall in that box will suffice? Your Honor, I will submit that. Your experience is already in the contract. Read the regulation before filling out this form. There is no all on here. Their explanation for this is that this is required to save them process, to be efficient. I submit that putting all on here under the explanation given will not end up in the same result. But I may be talking about something else, but also I understood the regulation of Mr. Hoppe, correct me if I'm wrong when we hear from him, that under 19.24B1, it also says that if the form is inadequate or incorrect, the claimant does not have to cure or correct its form unless the VA informs him that his form was incomplete and requests clarification. Is that your understanding? So if you get a form that says all that you say would be treated as inadequate, the VA can't just throw it away or reject it. It's required to go back to the claimant and tell him or her that this is inadequate for such and such reasons and give him a chance to prove it. But then we've defeated the entire purpose for the rulemaking. Because if you have a form which is so unclear and ambiguous that you have to ask for clarification, what's the difference between that form and the notification on a letter already? Would you be happy if your opposing counsel stood up and said, indeed, all will suffice, and if we're not happy with it, we'll ask further questions? I would accept that if it was actually written in the regulation or if some form Well, I mean, because that's my client's interpretation. No, I don't believe that. Spread on the record. It's still misleading because I would accept if they swapped the forms. Put a box. You have an unrepresented veteran who is getting documents he doesn't understand, in some cases still one-liners that say, you know, we didn't see it in the insurance record, goodbye. And there's no box on here that says, I'm just disagreeing with everything. And the write-up here is not. The brief does not say, oh, just put all in there. It defends specificity. You know, we see so many submitted appeals in which we ask, what is your specific claim, or Mr. Carver's not. And it simply says, they violated the Constitution. And we scan, you know, we delve into the record and see what it is that's in there. Absolutely, Your Honor, and that is what VA is saying they're not going to do anymore. That's the inefficiency they're trying to remove. If indeed that the whole purpose of the NOD portion of this rulemaking is to become more efficient, then you need to swap the forms. Say all. That's the whole purpose. They're violating. The point here is statutory. Congress was very explicit. It's a three-step process. I think both sides agree that a three-step process could be better as a two-step process. But it is a three-step process. We can't change it. VA should not be able to change it for administrative efficiency, as already found by this Court in 2003 in two separate cases, the PVA case, 345 at third, and also the DAB case where efficiency was given for shortening the one-year period to 30 days and also for authorizing the Board on its own to initially review evidence. They said it was efficiency. We need to shorten things. What they haven't said in this, other than pointing that out to you as well, what they also haven't identified is any alternatives to all this tumult. They don't even index their own files. Talk about inefficiency. Index the files. Everyone could find these files. You can't find a form inside of a 10,000-page file any quicker than you can find my one-page letter. Well, just because there's more work to be done doesn't necessarily mean that this isn't an appropriate first step. I mean, I take your point, but that doesn't really get us to where you need to go. Well, but there are no contemplation of alternatives. They jump to this in reaction, and that is a technical requirement of a rulemaking like this is to have a factual basis. They've identified lots of problems. We agree they have all those problems. What they didn't say was, and we've looked at this, and we can save 14 days out of our 22-day average to route mail from the mailroom to a desk by they just say we have a problem. We're going to require all these forms. As a strictly APA matter, this rulemaking fails because there's no evidence for anything. Specifically, the NOD was based on evidence from a regional office. It was found to have been cooking the books. Nothing else was provided. As a matter of fact, it's the use of Form 9. That form now takes, from the time they fill out that Form 9 to it actually gets certified to the board, is twice as long as it is from use of the NOD without the form to when they actually issue an SOC. Can I ask you, Mr. Huck, you may know the answer to this. I'm not sure, but maybe it's in the record. What's the volume we're talking about here nationally, annually? The board's report that I just cited, the statistics from 2014, shows that they're expecting about 60,000 to 70,000 appeals. So those would be the Form 9s. The NODs are somewhat larger than that because they get whittled down. So we once had a million claim backlog. Appeals were less than half of that, if I recall. But you're talking 100,000, maybe more. But in that range, probably several hundred thousand as we move forward. The point is the evidence that was not cited, the facts, have been going back 20 years. It's always taken longer to work the Form 9, which has all the attributes that they're now attributing to the NOD form, than it has to process the NOD form Notice of Disagreement. Therefore, the evidence underlying the entire premise either does not exist or cuts against. Thank you. Thank you. Are we still hearing about it as well? May it please the Court, Kenneth Carpenter appearing on behalf of the National Organization of Veterans Advocates. To begin with your question, Judge Prost, the National Organization of Veterans Advocates has two problems with this regulation that we would like the Court to address. The first is that the filing is mandatory and not permissive on their standardized form. In other words, standardized form is fine, but why must it be mandatory? Why must all veterans be required to do that? In the preceding 60-plus years that the statute has been in place, and the statute is 38 U.S.C. Section 7105, the process has been you file a Notice of Disagreement with the decision that is made. The VA responds with a statement, a case, you complete your appeal. I know of no other administrative process that requires an appellant to affirm twice that they wish to appeal. But that is the statutory requirement under 7105. The Notice of Agreement and then the later. And then the later. But tell me, so if they file a Notice of Disagreement with the written decision, at that point the Regional Office or the Regional Jurisdiction Office, whatever it's currently called, can, upon reviewing its initial decision, actually change its mind, right? Yes. Right. Well, as a matter of fact, they're mandated to do that. Doesn't that mean that it makes perfect sense to have a two-stage process? Because the statement of the case may actually be different from the written decision and, indeed, more favorable for the veteran. Well, if you're asking for my personal opinion as to whether it makes sense, no, Your Honor, it makes absolutely no sense. It is a redundant system that made sense when there was no judicial review because you were trying to make sure that everything was put into the pot, if you will, to go for the only review that you were going to get by the Board of Veterans' Appeals. There was no appeal after the Board of Veterans' Appeals. You simply had to start over with new and material evidence. Maybe you can just tell me why my current picture of this is wrong. So my current picture is the regional office issues a written decision. The veteran says, I disagree with effective date or something. The regional office says, in writing up the statement of the case, says, oh, I now see that I was wrong about this, so I'm now giving you more than I was giving you the first time. The veteran still disagrees now with a somewhat more favorable but not favorable enough statement of the case and now files an appeal where the grounds of that appeal are actually narrower than the grounds of the notice of disagreement. Is that not the way it works? And that does work in that particular circumstance. Where it doesn't work is where you have multiple claims that are being made. And one of the things that I think is important for this court to really focus in on in examining this regulation is what the statute says. The statute at 7105 says that the notice of disagreement is intended for a single purpose, to initiate an appeal. What it doesn't say, unfortunately, is what you're initiating that appeal from. In order to understand that, you have to read the preceding section, which is 7104, which is that the secretary makes one decision that may be reviewed, and that review is conducted by the Board of Veterans' Appeals. So what we're appealing, if you will, is the decision. What is problematic, in my view, with the VA's form is that nowhere in the form does it say, identify the decision with which you have your disagreement. That's all that the notice of disagreement is required to do by statute. What it does instead is to create a subset of descriptors, such as issues, and nothing in the statute says that you're appealing issues, and then it says areas of disagreement. Now we end up having three different concepts, and then you throw the third in, which this court did in the earlier questioning of my colleagues, which talks about claims, when there are multiple claims. Are you expressing disagreement with a claim, or are you expressing disagreement with a decision? My suggestion is that the only way that 7105 can be read is that you are expressing disagreement with the decision of the Secretary, because it is the decision of the Secretary under 7104, which is being appealed for review by the Board of Veterans' Appeals. Therefore, all that is required and should be required by a VA standardized form is to say that I express disagreement with the decision made by the VA. To go into any more detail, take out of play the second step, which is contemplated by Congress, which is for the VA to take a second look once disagreement has been identified or expressed by the veteran. Mr. Commander? Yes, sir. You were willing earlier to give us your personal opinion on something, so you've thought about this as a big picture for a lot. Can't the VA legitimately balance overall benefits for all veterans against an increased difficulty for certain individual veterans? No. I think that's fundamentally an apposite to the other. Even though in my question, overall, it clearly weighs in favor of all vets. Well, because I don't believe it does clearly. No, no, but can't they do that? No, I do not believe they can, Your Honor, because it's this statute. We're dealing with 7105, and the only instruction we have from Congress is that the function of 7105A for the notice of disagreement is the single function of initiating an appeal, to start the appeal process, the start your engines at the Indianapolis 500. That's all. You're dropping the flag to let the VA know, to simply put them on notice that the veteran wishes to appeal. There is no other purpose served by the notice of disagreement, and the creation of this mandatory form starts itemizing the things that you must have, and if you don't have them, then we're going to consider them waived, and that converts this non-adversarial system into a gotcha adversarial system, which is not the intent of Congress. The intent of Congress with the initiation of an appeal was simply to put the VA on notice. It is no more complex than that, and they have created a level of complexity that makes it difficult, quite candidly, for attorneys to understand how to do this. How do I, as an attorney... Can I ask you, what is your take on the question we were discussing earlier about whether writing the word all or saying something in the relevant boxes to the effect, everything you said in your written description is wrong from A to Z, or just all. I disagree with it all. I guess this has been in effect now for six months. I don't know whether you have any experience. Oh, yes. I have literally hundreds of these. I realize this is not part of the record in the rulemaking, but are they accepting those? Or, as the Chief Judge said, writing back and saying this is not acceptable, do better? They have been writing back and saying it's not acceptable because they don't like my attachments because my attachments don't fit into their form, that they want answers to 10A. And when I say C, attachment, and I outlined specifically in several pages... Well, maybe that's an incorporation problem rather than a... Well, I don't believe it is, Your Honor, because the problem is they want it to fit into their box. And if it doesn't... Mr. Kramer, have you tried saying, you know, we disagree with all of it? Without attachments. Without attachments. No, Your Honor, because I am concerned about waiving. Because if I say all, and this is where the precision, the use of precision in our description of what we're dealing with here in terms of decision versus issue versus claim is critically important. Because this Court has recently issued an opinion that deals with issue exhaustion. And issue is what's identified in the Notice of Disagreement. Decision is not what's identified there. And this is the setup for issue exhaustion and issue waiver. And that's not the intent of 7105. 7105 has a single limited purpose to initiate the appeal. To try to respond to your question, Your Honor... I'm not even sure which question is pending, but I'm interested in what you have to say. The one about whether or not to answer the no box would be sufficient. I'm not sure in my view that there is a, quote, problem with that. However, I do not believe that it is required by or should be required by this Court, or to permit the VA to even require that, as part of a Notice of Disagreement form. All the Notice of Disagreement forms should be saying is, there was a decision made or I received notice from the VA on this date and I expressed disagreement and wish to initiate an appeal. Ironically, they have taken that out of their form. There is no longer in the form any requirement to express a desire to appeal. So they have made a form that is very convenient and no doubt will be very efficient for the VA, but it is not what is contemplated by the statute. What is contemplated by the statute is a single concept, which is to initiate an appeal. Thank you. Thank you very much. VA Police Corp. Do you want to make any concessions, Mr. Hawkins? I thought, frankly, that I heard several this morning already. Everyone agrees that something needs to be done. Everyone agrees that standardization is perhaps a good way to do it, taking advantage of the technological advancements we've had since 1921, including the telephone. But what I've heard today, frankly, are a lot of concerns about hypothetical situations. So what I've heard are a lot of potential as-applied challenges down the road. But every time I think we talk about what the regulations do, we find out that the regulations don't do what has been suggested in the briefs. The regulations don't walk away from Comer, Roberson, or any of those other cases at all. Just to start being concrete about it and, I guess, working backwards, since we were just talking about the Notice of Disagreement, what is the VA's position, I guess, first about what the form itself actually requires? At least I'm quite focused on this question. Can the veteran say all and not more? And I guess Mr. Carpenter answered my question about how are things going now, and he says he's getting some reaction from the VA saying, no, this is not a good enough form. You have to do something. Can you clarify what you think is actually required by this form? I can answer the first question for sure, Your Honor, because it's plainly in the regulation. The second answer about what Mr. Carpenter has been experiencing, I don't know. But if he thinks he's satisfied the requirement in the regulation, which is to identify the issues by adding an attachment rather than putting a line in there, I would suspect maybe somebody at that RO needs to be talked to. But as far as what's required and whether somebody can answer the question in the NOD by saying all, I refer the Court, I think as Judge Prost mentioned, to 20.201.4, in which the form says, if the claimant wishes to appeal all of the issues decided by the agency of original jurisdiction, the form must clearly indicate that intent. So our understanding of this regulation is if somebody says all, then they have just appealed all. Can I ask you, I guess, a procedural question? Is my understanding right that if we thought that the form required some clarification to make that clear that that would have to be done by rulemaking? Well, can I just say this? I would have appreciated knowing that there was a concern about some box on the form prior to coming here today. So let me ask you, what was the state of the comment of the record in the rulemaking about comments? Did somebody say part of the problem, there's an argument that the form simply shouldn't be required, the kind of thing that Mr. Carpenter was arguing about decisions and issues and claims and against tradition and so on, but the particular argument that at least we've been focusing on a little bit here about whether a simple I disagree with everything would suffice, was that a comment put to the VA with respect to this form? The comments that I recall being related to the NOD issue were all about specificity, not so much that someone couldn't respond to the form by saying all or that there was a box missing like there is on the VA Form 9 that says all. In fact, frankly, when I heard the argument, I thought there was a box on this form that said all, and I can say that although I'm not the secretary or even with the department, the secretary has been made aware of the desire by at least certain people to have a box on the form, and I don't think even the court needs to say any more about that, although the court is free to, obviously. Well, except that if this is a form that veterans, often uncounseled, will be reading, and it is not, I would say, apparent on the face of the form that that would suffice. The form tends to suggest that something more is required. Hence my question, if all would suffice, does the VA have to go through notice and comment rulemaking to change the form? Was this form specifically adopted as part of the regulation, or was there a kind of incorporation by reference of a form? Yeah, I'm going to stand here and say I don't think we need to do any further rulemaking on this to change the form, and I'll also refer back to, I think maybe Judge Coase mentioned this as well, 1924B. The intent of this regulation with respect to the NOD is that if the VA thinks that they don't understand the response, it's incumbent upon the VA to go back to the claimant and clarify that, so that if somebody puts all on, that's going to be good enough. And if the RO has some concern about that, it's up to the RO to go back to the individual and say, what do you mean by all, which I hope would not be a question ever asked, but if it was, that would be the mechanism by which they would do it. No, I know, but Judge Taranto's point is obviously that that's fine in terms of the person that's aggressive enough or exhausted enough to just write everything across the form, but the concern is that somebody seeing this form will just get discouraged and not appreciate that all would suffice. So that's the point, I think, we're talking about. Well, I mean, I can say this, Your Honor, point taken about if there isn't a box on there for all, but I can't answer the question standing here as to whether or not that would require an additional rulemaking. Maybe it would. It sounds like we wouldn't get any opposition if we did it. Let me ask you some questions about your opponent's braids. The American Legion contends that the final rule abandons the VA's ability to adjudicate benefits for any medical condition that's not specifically identified and not related to the claims file. Is that correct? That's their contention as I understand it. The American Legion claims that the final rule will likely have a disproportionate impact on the most disadvantaged vets, the blind, the elderly, the poor, and will save the VA no work. That's a quote from them. They say the VA must still review informal submissions as they are received, and as a consequence, the workload is going to be the same. Is that correct? That, I understand, is their contention. It's absolutely incorrect as a matter of common sense, and I'll explain why. Okay, go ahead. You have a system in which 100% of the claimants submit forms, submit an application on pieces of paper, and they look 100 different ways. You impose a system in which you say, please just put the same information, or as the court maybe has noted earlier, and if not, it's in the brief, maybe even less information than you used to have on this form so we can identify it when it comes in. Oh, that's a claim. That's an NOD. That's a claim. If you now have 10% of people who are no longer following that practice, you have 90% that are. You have that much less work to do when you're going through. So, yes, the VA continues to go through all the submissions to try to determine whether there's a potential claim there, but now 90% of them are obvious on their face that there are claims and no time is being wasted trying to decipher, analyze, interpret. And although that function might still exist, it's now limited to those 10% or less, and as we expect, significantly less, of forms that, for whatever reason, are not being submitted through the forms. There's also other premises undergirding the attack on the forms, which I just a little. Well, I have one more I want to add. Okay. And that is, again, the American Legion, later in their brief, restates that argument in a different form, talking about disproportionate impact on veterans who are blind or have mental incapacity. And I was wondering if that was actually correct, if the VA has some sort of statistics on who uses the informal claims process. Well, prior to this reg change, we didn't really track that very much. Now, we have since the reg change. That would obviously lead to a question about what we now know, which isn't on the record. But, yes, prior to the reg change, we would. But, subsequently, frankly, we don't understand that argument. The rule change simply says put the same information or less on a form or in a phone call or on a computer. So the argument that someone who has trouble seeing or whatever, that would apply to the old rule as well. They would have trouble writing something down on a piece of paper or doing whatever. All we're doing is saying, if you use this piece of paper, we can find it a lot quicker. So what happens if I submit a piece of paper, you know, the way one could under the old system, and it's just a letter and it's the same? Do they go back, they take that and they call you and they say this is on you? They send you the application package under 5102A or B. And they explain to you that that's what you have to do. Fill out this form. So do you understand, am I understanding correctly, part of the concern raised by the other side is not only the adversity faced by having to do the form itself, but also the question of the effective date of the amount if you are ultimately awarded, right? So I just want to make sure I'm understanding. So their concern is you send a letter now and it's perfected through the process, but if you ultimately are successful, you'll get time back, you'll get back pay from the initiation of that letter. And now they're saying that you will only get back pay from the initiation of that form that's been sent to you as a result of that letter. Or the phone call or the form that you've got from the VSO. The premise is that folks won't follow direction. So the premise is that the old rule, people will ignore the new rule and simply continue to file the old rule, and they will be putting themselves at risk for some sort of deprivation of effective date benefits because of the way, well, their main argument is an attempt under Chevron step one to stop the rulemaking by arguing that 5102C prevents the secretary from identifying what is required for purposes of an application, which would be odd given that if 5102C did that, then why would Congress retain the authority for the secretary to do what he does in 5101, which is to specifically identify the form. So that's the main argument. When we get into the second part of it, it becomes sort of where is it fair to draw the line by requiring rather than not requiring. And I think we've already discussed the answer to that as well. Without a requiring, then nobody will do it, and there is no efficiency gain when we really all agree that something needs to be done. And we have a fail-safe step for those people who, for whatever reason, don't bother when they get a claim, a new claimant gets a claim. I mean, when a new claimant gets a claim, their belief is that that claimant is going to do what the old rule required and not bother to contact VA when they weren't a part of that old rule system. Why would they assume that they can do something that they were never a part of? The new claimant is going to call the VA or go on the website and say, how do I file a claim? And there are your three options to file these intents to file or go ahead and file your application, which most people actually do. They actually file the complete application. So people generally follow direction in life. You put a stop sign on the street, after a day or two, people are going to stop there. And these kinds of thought processes and the suggestion that the veterans are somehow incapable of following these simple changes to the system, I don't think it's necessarily correct. Am I correct that in some circumstances where a vet is, say, blind, that the VA will interview and fill in the form over the phone for that veteran? All veterans. That's eligible for every veteran. But that's available for that person. Yes, that's one of the options on the three intents to file. In the proposed rulemaking that you filled out online, the intent was to really become aggressive about standardization. Viable comments were raised during the rulemaking and VA responded by rejiggering the first step and allowing not only the submission by paper, but the submission by phone call and, of course, to continue with the submission by electronic communication. So taking advantage of all of our available technologies, the veteran is, we think, in a much better position to communicate an intent to file a claim with the VA than they used to. In fact, don't have to even identify at that stage what's necessarily wrong with them. They just need to know, am I asking for a compensation payment or for a pension? So what happens when the counselor on the VA end of the phone line gets it wrong in completing the form? That would be an as-applied situation, Your Honor. The rule would, this court would, or the Dutchess Court more likely would step in and say, you did something wrong in the facts of that case. And that's true of all of these questions about Roberson and Comer. I mean, where in this regulation do we say or walk away from Comer? I think we read through language in these regulations earlier, which talk about, you know, what the VA is going to do and all of the- Can I ask you, just to be clear, so we've covered the NOD issue and we've covered this intent to file informal claim issue. So now are you moving to what's kind of the third issue, which is what you say and whether the VA has to investigate further if another claim is percolating that? Is that what you're going to get into? To be perfectly honest, that we can talk about. I'm not sure I intended to do that. I was kind of using that as an example of an overall theme, but I'm happy to talk about that. Well, could you talk about- I'm a little unclear on how the new system compares to the old system in terms of the VA's- what you think the VA's obligation is if you file a claim and you're talking about, as Judge Wallach said in his hypothetical, your knee. But somehow in there, ingrained in the evidence that's presented is some problem with your elbow. I think the difference between the new system and the old system is zero. There is no difference. There is no attempt by this regulation to constrain what the VA is required to do under existing regulations. If there were, you would see, instead of the regulations that are listed here that are being modified, changes to three- or someone's reading of Robeson, in that circumstance, if there's evidence lurking in the record somewhere, it's up to the VA to develop that evidence, and presumably that would be consumed in the initial claim itself, including the effective dates and so forth. I don't know if you were in agreement that that's what the VA did historically or is required to do historically under Robeson in those cases. Well, certainly, and I'll clarify one comment that was made about Robeson. In TDIU, VA considers to be part of a claim. But do you think the VA read Robeson as going beyond that in terms of any other issues or evidence that might be lurking? We do after we read Comer. So going into Comer, we had a more limited view of Robeson. Coming out of Comer, we had a different view of Robeson. And there's no change to Comer or the requirements imposed by Comer in this case. But Comer, as this Court has recognized numerous times since, is not unlimited. And Robinson, the Court warned that we also do not suggest that under the regulations, a veteran is entirely relieved of his or her obligation to raise issues in the first instance before the VA. So to answer your question, Chief Judge Brose, and we identify this, I think, in some detail in our brief, what VA does when they get a claim is they thoroughly examine that claim and try to figure out what all the permutations of that claim might be to include secondary service connection, related claims, misdescribed claims, whatever the evidence suggests in the development of that claim, the VA considers that part of the claim. And that's what this regulation continues to uphold, frankly, by not saying that it doesn't. What is, I think, the genesis of a lot of the discussion about this was a comment in response to some other comment that the VA made in the preamble at 13 and 14 of the JA that says along the lines of, of course, the VA doesn't have a responsibility to identify claims that aren't raised. Now, and that's consistent with what we understand. I just read in Robinson and Smeiraj, which preceded that, which also recognized that this is a non-adversarial system. And everyone likes to talk about how that it's, you know, that the VA has to play, the VA is different in approaching the claimants than maybe other agencies or other entities are. But as the Veterans Court, I think, keenly noted in the Ingram case, that doesn't mean that there's not responsibilities left with the claimant. And Congress agrees in retaining 38 U.S.C. 5107, which provides ultimate responsibility for the presentment of the claim as well as the submission of the supporting evidence with the claimant, not with the VA. We have to operate in a universe in which in order for the VA to help the claimant, the claimant has to help the VA. And what we're doing here is trying to get, spur, ask a question at the early stage of the claimant that might cause the claimant to think, hmm, maybe this is what's wrong with me. Or if I say it this way, we can understand everything better and the ball gets rolling quicker, the bus goes down the road quicker, the claims get flowing faster. But it is in a non-adversarial process, both sides coming together to work together like a dance. They have to work together. And all the VA is saying here is, please, help us help you. We want you to tell us what's wrong with you. During the course of the development, as this court has dealt with in previous cases, if somebody, like at a board hearing where, excuse me, at a regional office hearing where the regional office judges are supposed to ask questions, and they come up and they say, hey, wait a minute, what about this other thing? Did you ever think about maybe making a claim for that? Yeah, that's required. We're not talking about, you know, in this case, the authority, I mean the development part. All we're talking about here is presentment. If you give it to us on this form. I asked earlier about my understanding, which made exactly the distinction that you're making. So I guess I want to be sure that I'm understanding it right. That there is no denial within the regulations or by you standing here today that every bit of evidentiary development that took place before these regulations still took place under the general obligation to develop evidence still has to take place. The only question, and we can argue, I guess, or think about whether this was a change or not, is that if you develop evidence about the elbow in a claim that is filed about the knee and the elbow problem is truly unconnected to the knee, then the VA is saying you're going to have to file a new claim on that. We're not going to give you benefits about the elbow from the effective date of the knee claim. Is that what we're talking about? And that's the way it used to work, is during the development of a claim, if a completely separately related claim was suddenly on the stage such that the RO was in a position to say, wait a minute, did you realize you, you know, have a shrapnel wound and, you know, that always requires a separate claim. It didn't become part of the shoulder claim or the PTSD claim. Well, I mean, the PTSD and those kinds of things, they can sometimes be, but I think to answer your question, Judge Farnley, yeah, the old system would have always required a separate claim. This is, we want to move over to the NOD stage for a second just to answer your question about how the regulations work that you had in exchange with Mr. Carpenter at the end about the value of having this two-stage appeal process. One of the values is that, and it's been going on forever, when the VA receives an NOD after a decision and they do under regulation have the requirement to go through and determine, well, based upon that NOD, am I going to change my mind? I mean, the hypothetical always is you were denied benefits because the DIC benefit, you know, and the individual replies with an NOD saying, you never asked me for my marriage certificate. Here it is. And that case doesn't get appealed. That case, the benefits get granted. And that's the purpose, to clarify obvious errors that the RO might have made. The NOD either can point it out through an argument or the submission of evidence at that stage and thereby eliminate any need to go further before the board or whatnot. It's a very valuable step. And I can see a difference from an advocate's perspective in which when he comes into the process, that step's already passed, and so there's a question about why was it even necessary. But from an adjudicator's perspective, the possibility of ending it early is a very legitimate basis to have the two-step approach. And there's nothing I heard here today to suggest that that should be removed. But the idea would be when that comes in and the NOD says, yeah, I know you did this with my shoulder, but, you know, I also have this knee thing or whatever. Then we get into this whole, at that stage, what happens is it goes back to the RO, and the RO has to now adjudicate that new issue that's been identified as a separate claim. And if it happens later on in the process, after a statement of the case has been issued, regulations plainly provide that. Any time a new issue is raised, it's got to be the subject of a supplemental statement of the case, which then has to go back to preserve this idea of two levels of review before the RO and the board. There are lots of measures built into the system to try to help the veteran when an issue may not have been identified initially but then somehow comes up during the process. VA is encouraged to help the veteran explore those issues, and there are mechanisms by which they are dealt with. But all we're saying is that when you get to that point where something's a new claim, just use this form so that we can tell, amidst all the other correspondence we get, this is the claim. And while I'm thinking of it in the NOD process about those forms in the NOD and filling them out, remember the regulation plainly says those forms are attached to the final decision. So the person gets them. They're right there for them. I mean, it couldn't be more convenient to say, I disagree. Send it back. You know, sorry about that side, but there was a point about that. And so at the court, I mean, like I think we asked, or Judge Wallach asked earlier, whether it was rational to draw the line where we did, where we tried to encourage the submission of these things as opposed to just not encouraging them. I mean, the system, any reasonable person I think would say that the system would work. I think the system is working. And we don't see any statutory basis by which this thing should fall. Well, based on that, and I don't think you've already covered this, but Mr. Carpenter made the statutory argument with respect to the NOD in terms of 7104 and 5. Galagos. Just saying, yeah. Galagos, this Court's already said that there's a gap to be filled with respect to what is required in an NOD. In Galagos itself, the issue is whether there should be some sort of intent somehow. All we're saying here is tell us. And as the regulation provides, it's like, tell us, are you appealing your shoulder? We're not asking for diagnostic codes. We're not asking for medical opinions. Is it your shoulder? Or is it your denial of service connection? Those are very broad, top-level characteristics. Or, as we discussed, is it everything? Is it all? The VA is in the business of providing claimants benefits. They're not in the business of depriving them or making it more difficult. But they are in the business here of trying to figure out a way to get people's benefits to them quicker than has been in the past. And we think we came up with a really good way to take advantage of, basically, the advances that have taken place in the last hundred years since some of these old regulations were written. And we want to take advantage of them. And we are fully confident that the veterans community as a whole is willing to embrace this and, frankly, already has. And we ask that the Court uphold what we make. Thank you. All right. We went way over, but why don't we give you back each three minutes. But hopefully you won't need to use them. Thank you very much of the quick. The VA has now conceded that, under the new system, they must still go through all the informal submissions that come into the building. There's no dispute about that. Just a much smaller number, they hope. They argue that the number would be smaller, but there is absolutely no evidence in the rulemaking of why that would be the case. In fact, everything they say about this claim and how easier they are to use will suggest that any capable applicant who can actually be expected to use those forms will use them anyway. They will choose to use them. They have not been able to articulate a sensible reason in the rulemaking or today as to whether these applicants would decide to opt out of the system. That's not true. Mr. Hockey said that the idea is to make it mandatory to encourage usage and that without that mandate, the VA believes that it wouldn't be used. No, that's right. So that's not irrational. He identified a rational argument. To be clear, to make that assertion, what they've not done is provided any evidence of why any capable applicant would decide not to use the new forms or not to apply electronically and instead to submit an informal submission. All they're saying is, well, you know, what we are trying to do is just reward veterans who don't want to follow the rules. No, all we are doing is we are giving an understanding and taking account of the unique predicament of many of the veterans. What we are talking about is elderly veterans who have been working with the VA system in the past and in the past they initiated their claims for an informal submission. Now they may try this again when their disability worsens or for some reason they have a new disability they want to apply for. They will send in the same informal claim. The VA will take however long it takes the VA to respond. And then because that informal claim did not establish an effective date, the veteran will be out a significant amount in benefit. Well, isn't there some time limit in the regulations with respect to how quickly the VA does have to respond and send the forms out? Is there another time frame? I don't believe there's a regulation as to how quickly the VA must respond with respect to furnishing application forms under 51 or 2A, which is what they would do in this case. That is part of the problem. And even if there were a time limitation, and I'm pretty confident there isn't such a limitation, the problem is that an entire period of benefits would be lost. This would be a different case if, in fact, requiring the use of forms would actually cause more applicants to use those forms. But as they explain, and we agree, capable applicants already have every incentive to use these new forms. So we're talking about what to do with those who fall through the cracks and cannot be expected to use these forms, whether because they're elderly, disabled, that's PTSD, they're homeless, their predicaments are unique. And they are saying they're on their own. We are saying, no, their expected date, as has been the case for the last 80 years, should be fixed according to the intent of the applicant and when the applicant first manifested that intent. Thank you. Judge Wallace, to answer your earlier question about how do you set the balance, this court in the DAB case at 1348 specifically and explicitly said, only Congress can set the balance between the efficiency of the appeal process and the veterans' due process right. And those are the words in there. So that answers, I believe, your question. It's not up to the Secretary to decide his efficiency is more important than a certain right. It is Congress. And Congress has set that in the process in 7105, which, again, Mr. Hoffman. So rational basis has no bearing on this. I hesitate to say rational when we're talking about the VA process. I refer you to the court's own language of who sets the balance. The balance here, we've heard the balance hasn't been changed. Well, the balance has been changed. If you do not put an issue on the form, the NOD form, it is explicit that issue is waived. It doesn't say unless you do, you check, you write all in the box. Okay. So, again, Mr. Carpenter's covered issues, claims, decisions. I struggle with those. I can't expect the veteran to do anything else. Mr. Hockey's mentioned that all they've done in 7105 is fill a gap. What's the gap? There is no gap. It is explicit. NOD, statement of the case, that explains the issues. It must address each issue, it says, each issue. Then the veteran, if this negotiation, this working out does not work, gets to pick and must identify the issues to appeal. Where's the gap? I have also not heard any response to all of our argument about the factual basis. These forms are supposed to be to improve the process, which we hope they do, regardless of the form they come out. But there is no evidence that they do. And, indeed, all we've heard is, well, we're going to try it and see what they do, and then we're going to send them back. Where is the evidence? The only evidence is in the board's reports and the history over 20 and 30 years, not some truncated little pilot test at a facility where they found they were cooking the books. Can I ask you a question, and forgive me, about the notice of disagreement? Was that one of your issues or not? Yes. Okay, so were there comments during the rulemaking process that called to the VA's attention the absence and criticized said absence of an all box or something substantively equivalent to what I just asked? The Veterans Justice Group criticized the need for specificity and that we pointed out that under the old rules and current rules, all you had to say was we want to appeal them all. It's a notice. We argued the notice issue. And this issue has been argued many, many times before your court as well as below about what the NOD was. But we did specifically in our comments to the rulemaking, and I believe I don't have them with me, but we did in the Veterans Justice Group initial comments to raise the issue of the specificity. One last point. Well, I want you to finish the sentence. I was a nuclear submarine sailor. We had a rule called the 50-50-90 rule, and we used it although we had procedures and checklists well beyond what we're talking about here. If it's a 50-50 chance, a nuclear sailor will get it wrong 90% of the time. I think that the Army and the Air Force is in similar statistical groupings. We have to look at the practical aspects of this rulemaking. And, again, if the forms are meant to increase efficiency, it needs not generate more inefficiency than that. We don't know what it will, but I would apply that rule to the best it can. Thank you very much. Thank you. I'd like to start with Mr. Hockey's last comment about all the Veteran needs to do is to say on the form, I disagree. With all due respect to my colleague, Mr. Hockey, there is no place on the VA's form that says, I disagree. The other thing that the VA did not do was to respond, as they did not in their rulemaking, or explain why this form is mandatory. Why must every Veteran use this form? Why can't a Veteran continue, as they have for more than 60 years, to simply express in writing a desire to appeal and a disagreement with the decision made by the VA? I'd like to also talk to the Court about the reference made by Mr. Hockey to the Robinson decision. It's important for this Court to recognize that the Robinson decision had nothing to do with issues identified in the Notice of Disagreement. The reason for that is that issues were never required to be identified in a Notice of Disagreement until this rulemaking. Robinson was talking about issues that were identified in either a VA-9 or in arguments to the Court on appeal from a decision of the Veterans Court. So the reliance upon Robinson is not appropriate in this rulemaking case. Additionally, the government's reliance upon Galeos is not appropriate. Galeos was a case that said that there was ambiguity in the statute because the statute does not define a Notice of Disagreement. The definition of a Notice of Disagreement has nothing to do with this rulemaking. This rulemaking is about the mandatory use of a form that is not required by the plain language of the statute. Nothing in the statute requires that a form be filed. All that is required by the statute is that the VA be put on notice that the Veteran has a disagreement with the decision, which gets me back to the point of why it is important for the VA to define what they mean. There is nothing in this regulation that defines an issue. There is no other VA regulation that defines what an issue is. How is a Veteran or a Veterans representative supposed to complete this form without some idea as to what is meant when it says on the form under Block 10a, Specific Issue of Disagreement? Block B is Area of Disagreement. Neither of those terms are defined. There is a listing under the B section with an all-encompassing other as the fourth option. Well, it says other, please specify it. I'm sorry, yes, it does. It says, please specify it. It is the position of NOVA that this Court should reject the rulemaking as overreaching and as not consistent with the plain language of 7105. Those are just further questions from the Court. Thank you very much, Your Honor. Thank you.